**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CRYSTAL MORALES, on her own )
behalf and on behalf of her son, D.R., )
ELISHEBA MORALES, on her own )    No. 22 CV 2725
behalf and on behalf of her sons, L.M.G. )
and L.M.P., and )    Judge John J. Tharp, Jr.
AIESHA ANDERSON, on her own )
behalf and on behalf of her son, S.H., )
          )
      Plaintiffs, )
          )
      v. )
          )
CITY OF EVANSTON, a municipal )
corporation, and )
Evanston Police Officers )
LOYCE SPELLS, )
MICHAEL CAMERON, )
WILLIAM ARZUAGA, )
SEAN O'BRIEN, )
REBECCA NIZIOLEK, )
TED SCHIENBEIN, and )
GIL LEVY, )
EVANSTON TOWNSHIP HIGH )
SCHOOL DISTRICT 202, and )
Evanston Township High School Safety )
Officers )
KEVIN AUGUSTA, )
TARRA JOHNSON, )
TERRON BELL, and )
MATTHEW DRISCOLL, and )
Evanston Township High School )
administrators )
NICHOLE BOYD, )
PEDRO SORIANO, and )
KEITH ROBINSON, )
          )
      Defendants. )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Something happened at Evanston Township High School on the morning of December 16, 2021, but it's not clear what. The result was a lockdown of the school and the arrest of at least four students. Claiming unlawful detention and search, and interference with familial relationships, the four students and their mothers sued the school district and a number of its employees ("the School District defendants); they also sued the City of Evanston and seven of its police officers ( "the Evanston defendants"). Each group of defendants has moved separately to dismiss the complaint, which raises more questions than it answers about what happened. But at this juncture the lack of factual detail tends to favor the plaintiffs, whose spare allegations must be assumed truthful and need not anticipate defenses. There is more to the story, clearly, than the complaint reveals, but the full telling will have to await discovery. For now, the plaintiffs' principal claims for unlawful detention and search, and interference with familial relationships, can move forward as to most of the defendants.

## I.  **BACKGROUND**

Plaintiffs D.R., L.M.G., L.M.P., and S.H. were students at Evanston Township High School ("ETHS"). Plaintiff Crystal Morales ("Crystal") is D.R.'s mother; her sister, Elisheba Morales ("Elisheba"), is L.M.G. and L.M.P.'s mother. Aiesha Andrson is S.H.'s mother. Their accounts of what happened are incomplete, they acknowledge, because they have limited access to information available to the defendants. It doesn't help, either, they say, that some surveillance footage at the school "has been deleted." In any event, the facts alleged, though sketchy, are taken as true for the purpose of addressing the defendants' motions to dismiss, and all reasonable inferences are drawn in the plaintiffs' favor.

All of the events alleged occurred on December 16, 2021. On that morning, D.R., L.M.G., and L.M.P. were walking in a hallway of the school, when they were "apprehended" (Compl. ¶ 18) by school safety officers Tarra Johnson and Terron Bell (both of whom are defendants) and

were taken to the Dean's office. At some point earlier that morning (unspecified in the complaint), an unidentified staff member had reported smelling marijuana in a restroom on the 2nd floor of the east wing of the school. Johnson falsely reported (to whom, the complaint does not say) that she had located D.R., L.M.G., and L.M.P. in that restroom.[1] When they arrived at the Dean's office, defendant Nichole Boyd, a school administrator, took the students' backpacks and dumped the contents on the floor. Each of the boys was placed in a separate room and was questioned by ETHS employees, including defendants Boyd, Pedro Soriano, Keith Robinson, and Loyce Spells.[2] The complaint does not allege the substance of any of these interviews. While subject to this detention, the students were not permitted to communicate with their mothers. Spells confiscated L.M.P.'s phone and Boyd did not permit D.R. to answer his phone; the complaint says nothing about whether L.M.G. had a phone.

Elisheba learned that something was going on at the school from a classmate of her nephew D.R. and drove to the school to find out what was happening. Crystal also received a call from a classmate of D.R.,[3] who reported that D.R., L.M.G., and L.M.P. were being held and questioned in the school office. When Crystal tried to call D.R., he answered, but Crystal heard Boyd direct D.R. to hang up the phone and Boyd would not let him answer Crystal's subsequent repeated calls.

Crystal then drove to the school, where she connected with Elisheba and told her that Elisheba's sons, L.M.G. and L.M.P., were also being questioned. The sisters tried to enter the school, but were not permitted to do so. They waited at the entrance for hours without getting any

---

[1] The Evanston defendants mischaracterize the complaint as alleging that the staff member reported that students were smoking marijuana in the restroom.

[2] The complaint alleges that defendant Spells was an Evanston police officer who was assigned to ETHS as a school resource officer. Compl. ¶ 14.

[3] It is not clear whether this was the same classmate who called Elisheba.

information about what was happening with their children. At some point, however, they observed police with automatic weapons flooding the halls of the school, and someone informed them that the school was on a "soft" lockdown and then later a "hard" lockdown (for what reason the school was on lockdown, the complaint does not say).[4] Defendant Matthew Driscoll, a school safety officer, asked police (unidentified) to remove Crystal and Elisheba from the vicinity of the school's main entrance, without success. At some point, defendant Robinson, a school administrator, asked for their names, but left without answering any of their questions.

In the meantime, at some time that morning, defendant Kevin Augusta, another school safety officer, viewed a video recording (of what, the complaint does not say), from which he identified plaintiff S.H. as one of a number of students who had been "in contact or associated with" the five students who had been apprehended originally (who the original five students apprehended and for what they were apprehended, the complaint does not say).[5] Augusta's identification of S.H. prompted defendant Soriano to call Plaintiff Anderson. Soriano asked Anderson if her son, S.H., was at school. Soriano told her that the school was trying to locate a few stragglers and asked Anderson to call her son to find out where he was. Anderson complied and called S.H., who told her he was in class. Anderson advised Soriano that S.H. was in classroom N-206. Thereafter, Soriano reported S.H.'s location to police. Defendant police officers Niziolek

---

[4] The defendants assert that the Court may take judicial notice of a video of a press conference at the Evanston police department, and a news article based on that press conference, reporting the discovery of marijuana use and two handguns at the school, prompting a lockdown and investigation. ECF No. 7-1, School Dist. Mem. in Support of MTD, at 2 n.1; ECF No. 19, Evanston Mem. in Support of MTD, at 2 n.1). That is only partly correct. The Court may take notice of the existence of such reports, but not the truthfulness of their content—which is precisely what Judge Dow said in *Cook Cnty. Republican Party v. Pritzker*, 487 F. Supp. 3d 705, 713 (N.D. Ill. 2020), a case the School District defendants misconstrue. *See also infra* at 11-12.

[5] The Evanston defendants suggest that D.R., L.M.G., and L.M.P. were three of the five students originally "apprehended," ECF No. 19, Evanston Defs.' Mem. in Support of MTD, at 2-3, and that they had been found in possession of firearms, but the complaint does not so state.

and Cameron then went to the classroom with Soriano and searched and arrested S.H., removing him from the classroom in handcuffs.

At some point, D.R., L.M.G., L.M.P., and S.H. were all transported to the Evanston police station by or at the direction of defendants Spells, Levy, Arzuaga, and Schienbein. At the station, defendant officer O'Brien "maintained custody" of S.H.; defendant officer Sheinbein maintained custody of L.M.P.[6] Crystal and Elisheba must have learned about this, because they left the high school and went to the police station themselves. Unidentified Evanston police officers asked if the students would waive their right not to be questioned and the sisters refused to waive their sons' rights. Ultimately, L.M.G., L.M.P., and S.H. were released that afternoon.

## II.    ANALYSIS

It is important, in considering a motion to dismiss a complaint for failure to state a claim for relief, to distinguish between claims and the legal theories invoked in support of the claims. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quotation omitted). "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence," *see* Fed. R. Civ. P. 10(b)—but as here, are often employed to assert different legal theories in support of the same claim.[7] A "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal," *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d

---

[6] The complaint does not identify any officer who maintained custody of L.M.G. at the station.

[7] Though a common practice, setting forth legal theories in separate counts is inconsistent with the federal pleading rules. As Judge Shadur explained in *Bonestroo, Rosene, Anderlik & Associates v. Devery*, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.'" No. 05-cv-02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citing *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1991)).

1073, 1078 (7th Cir. 1992), but no matter how many legal theories, or "counts," a plaintiff may assert, they constitute part of a single "claim" to the extent they are premised on the same facts. "[D]ifferent legal theories . . . do not multiply the number of claims for relief." *NAACP v. Am. Fam. Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992); *see also id.* ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

The distinction between claims and legal theories is important because Rule 12(b)(6) permits only the dismissal of claims, not legal theories. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). "[A] complaint cannot be dismissed merely because one of the theories on which it proceeds, and the facts alleged in support of that theory, do not make out a claim for relief." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). To the extent that any viable legal theory exists to support a claim, that claim will survive a motion to dismiss even if the claim would fail under other theories. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); *Croixland Props. Ltd. v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) ("[I]f one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint."); *Churchwick Partners, LLC v. Seal Keystone, LLC*, No. 22-cv-02251, 2023 WL 2973801, at *2 (S.D. Ind. Apr. 17, 2023) ("A Rule 12(b)(6) motion cannot be used to dismiss individual legal theories advanced in support of a claim, so long as at least one theory, implicit or explicit, remains[.]").

The time for identifying and testing the viability of legal theories comes after pleading and responding to the complaint, during discovery and the summary judgment process. *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("Making legal

arguments in support of one's claim comes after the pleadings."); *BBL*, 809 F.3d at 325 ("Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for '[p]artial [s]ummary [j]udgment' and require parties to 'identif[y] each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.'") (alterations in original) (quoting Fed. R. Civ. P. 56(a)); *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). At this stage, it is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). "A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

"What this all means is that when two theories based on the same facts—and part of a single claim for relief—are presented in a complaint, and a defendant only challenges the sufficiency of the complaint as to one of the theories, the claim cannot be dismissed." *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016). "And the challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage." *Id.* So here, where the plaintiffs have asserted multiple legal theories in support of a claim, the defendants face the challenging task of demonstrating that there is no legal theory under which the plaintiffs are entitled to relief.

The Court reads the complaint to assert two claims: (1) unlawful detention and search, and (2) unlawful interference with the familial (parent-child) relationship. Though not required to set forth any legal theories in support of their claims, the plaintiffs press both federal and state law

theories of liability. As to the unlawful detention and search claim, they assert that various defendants violated the students' rights under the Fourth Amendment and the Illinois Constitution by falsely arresting them (Counts I, II, and III) and searching their persons and property (Counts IV and V).[8] With respect to the parent-child interference claim, the plaintiffs allege that various defendants violated their right to substantive due process under the Fourteenth Amendment (Count VI), and the requirements of the Illinois Parental Notification Act (Count VII). In Count VIII, the plaintiffs invoke the tort of Intentional Infliction of Emotional Distress ("IIED"), a theory that comprises the conduct alleged in both claims, and in Counts IX and X they assert that defendant Levy is liable for the actions of the police officer defendants and that all defendants are liable for failing to intervene to prevent the asserted constitutional violations.

### A.    Claims 1 and 2: Unlawful Seizure and Search

Plaintiff Anderson and Elisheba Morales assert that their sons were falsely detained or arrested by several ETHS school administrators and safety officers and several Evanston police officers.[9] Anderson alleges, on behalf of S.H., that Evanston police officers Niziolek, Cameron, and O'Brien, with the assistance of school safety officer Augusta and school administrator Soriano, unlawfully seized S.H. (Count I). Elisheba alleges, on behalf of L.M.G. and L.M.P., that they were unlawfully seized (arrested) by Evanston police officers Levy, Spells, and Arzuaga, sometime after they had been unlawfully detained by ETHS school safety officers Johnson and Bell. (Count II). Anderson and Elisheba also maintain that the city of Evanston and ETHS are responsible for the

---

[8] In the complaint, the plaintiffs clarify that Counts III and IV are based on Illinois common law, not on the Illinois Constitution. ECF No. 21, Plts' Response to Motion of Evanston defendants at 9.

[9] No false arrest claim is asserted as to D.R. The Evanston defendants suggest that not asserting a claim of false arrest constitutes an "admission by omission" that there was probable cause to detain D.R. ECF No. 19, Resp. at 7. That is entirely speculative, and no such inference is warranted.

false arrests made by their agents. (Count III). And joined by Crystal,[10] Anderson and Elisheba also assert on behalf of their sons that the city and high school are also responsible for the searches conducted by defendants, along with the individuals who participated in the searches, though they acknowledge that they currently cannot identify those individuals. (Counts IV and V).[11]

The plaintiffs' unlawful detention and search claim rests on the premise that, as to both detention and search, "[t]here was never any probable cause or reasonable suspicion . . . that L.M.G. L.MP., or S.H. had been engaged in any criminal activity whatsoever. Yet they were apprehended, searched, handcuffed, and taken into custody." Compl. ¶ 75. Accordingly, there is no need to address the issues of detention and search separately. Because different Fourth Amendment standards may apply to the conduct of school officials and police, however, the Court assesses the allegations pertaining to each of these groups of defendants separately.

### 1. School District Defendants

The Fourth Amendment's "prohibition on unreasonable searches and seizures applies to searches conducted by public school officials." *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). That said, "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *Id*. at 340. Warrants, for example, are generally not required in the school environment. *Id.* ("we hold today that school officials need not obtain a warrant before searching a student who is under their authority."). Nor need a search or seizure in the school

---

[10] Counts IV and V purport to be asserted by "all plaintiffs," but Crystal, Elisheba, and Anderson have no claim for unlawful search themselves; these claims are asserted by the mothers only on behalf of their minor sons.

[11] The complaint also alleges that "one or more currently unknown defendants" unlawfully searched the backpacks and lockers of D.R., L.M.G., L.M.P., and S.H. This allegation is insufficient to implicate any particular defendant in those searches, and in the plaintiffs' response to the Evanston Defendants' motion, the plaintiffs state that they have no objection to dismissal of claims against unknown defendants. ECF No. 21, Plts' Resp. to Evanston Defs' Motion at 11.

setting be based on probable cause; "the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law.[12] Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id*. at 341. Those circumstances include the need for "[i]mmediate, effective action … to deal with the frequent occurrence of events that call for discipline. *Id.* The diminished protection of the Fourth Amendment for public schoolchildren is proper, the Court reasoned in *T.L.O.,* because classroom discipline and school order are crucial to effective education, and, moreover, the infusion of schools with drugs and the related escalation of violence make order and discipline all the harder to maintain. *Id.* at 339. *See also Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995). The Court in *T.L.O.* held that a school search is "reasonable" if it is "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." 469 U.S. at 341–342. A "search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id*.[13]

---

[12] T.L.O. involved both a search and a seizure by school officials, though its focus was on the search. The rationale of the opinion applies in both contexts, however, and the Seventh Circuit and several other circuits have applied its reasonableness standard in the context of both. See *Wallace ex rel. Wallace v. Batavia Sch. Dist. 101,* 68 F.3d 1010, 1012–14 (7th Cir.1995); *Hassan ex rel. Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1079–80 (5th Cir.1995); *Edwards ex rel. Edwards v. Rees,* 883 F.2d 882, 884 (10th Cir.1989) . . , *e.g*., *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 949 (9th Cir. 2018) ("Though *T.L.O.* dealt with searches, not seizures, we have specifically extended its special needs test to seizures conducted by school officials in the school setting.").

[13] The School District defendants make passing references to qualified immunity as to these claims (*see*, *e.g*., ECF No. 7, School District defendants MOL, at 7; ECF No. 22, School District

The School District defendants argue that they were presented with just such a situation on the morning of December 16: a staff member had reported smelling marijuana in a restroom on the second floor, defendant Johnson reported finding D.R., L.M.G., and L.M.P. in that restroom, and two loaded handguns were recovered, somewhere, in the course of responding to the report of marijuana use in the restroom. The School District defendants rightly observe that "[w]eapons in schools pose a unique danger," Mem. at 5, and given the need to protect the students and staff at the school, they argue, it was reasonable to detain and question the student plaintiffs about their involvement or knowledge concerning the drug use and firearm possession at the school that morning.

The complaint, however, says nothing at all about the recovery of loaded handguns at the school. Although the complaint acknowledges that there had been some report of the scent of marijuana wafting from a second-floor restroom (¶ 19), it provides no information about the recovery of any firearms at the school. For that information, the defendants rely on evidence external to the allegations of the complaint—specifically, a video press conference conducted by the Evanston police department later that day, and a news report based on the press conference. The defendants contend that this Court can appropriately take judicial notice of the information

---

Defs' Reply, at 9) but present no developed argument as to an entitlement to qualified immunity. Indeed, the school defendants do not even identify the constitutional question with any specificity. Undoubtedly, the defendants' ability to present a fulsome argument for qualified immunity is limited by the dearth of facts alleged in the complaint, but "as a matter of federal pleading rules the plaintiff[s] are not required to set out in [their] complaint all of the facts that might bear on qualified immunity." *Beathard v. Lyons*, No. 22-2583, 2025 WL 632975, at *5 (7th Cir. Feb. 27, 2025). "At the pleading stage, the assessment of qualified immunity turns solely on the allegations of the complaint, whereas at the summary judgment stage, the assessment turns on the undisputed facts. *Behrens*, 516 U.S. at 309, 116 S. Ct. 834. Thus, if a court has rejected qualified immunity at the former stage of the case, the defense can be raised again at the latter stage." *Beathard v. Lyons*, No. 22-2583, 2025 WL 632975, at *5 (7th Cir. Feb. 27, 2025). The defendants will be permitted to assert any qualified immunity defense at summary judgment.

provided by those materials, and therefore the reasonableness of the actions by the defendants must be assessed in light of the discovery of the firearms those materials report.

Judicial notice is only appropriate, however, where the information at issue "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). That is not the case here. While the plaintiffs do not dispute that firearms were recovered in the school, neither do they allege or otherwise concede that fact, and here, the source of the additional information about the recovery of firearms—the city of Evanston—is one of the defendants in the case, so the substantive accuracy of the report cannot be assumed (any more than the substantive accuracy of a police report could be assumed). As a fallback, the defendants assert that the court may take notice of the *existence* of the video news conference relating to the lockdown following the discovery of firearms at ETHS, but that gets them nowhere; the fact that such statements were made has no independent significance here. The defendants want the Court to take notice of, and accept as true, the substance of the statements made, not the fact that they were made. That is not permissible.

So, the Court must assess the reasonableness of the defendants' actions in light of the information that was known to them at the time. But in assessing what was known to the defendants at the time, the allegations of the complaint define the limit.

Even on the spare allegations the complaint provides, the Court cannot conclude that the School District defendants acted unreasonably in detaining and questioning L.M.G. and L.M.P. in the school office or in searching their backpacks and lockers. As the School District defendants persuasively argue, if the three students were in the restroom where marijuana was detected shortly after it was detected, as Johnson reported, it would certainly be reasonable to suspect that they might have been involved in that misconduct or have knowledge about the involvement of others

12

in that misconduct. Detaining them for questioning and searches would therefore be reasonable; this scenario provides a close parallel to the scenario in *T.L.O.*, where the Court found reasonable the search of a purse belonging to a student accused of smoking in a lavatory. *See also*, *e.g.*, *A.M. v. Holmes*, 830 F.3d 1123, 1160 (10th Cir. 2016) ("it is settled . . . that a search of a student which is justified at its inception is also justified as to outer clothing and a backpack.").

Of course, as noted above, the complaint alleges that Johnson's report that the three students (D.R., L.M.P, and L.M.G) had been located in the restroom was false, but it does not allege that the other school defendants knew that her report was false; they could therefore reasonably rely on the information Johnson provided in detaining and questioning the students. *See T.L.O.*, 469 U.S. at 345-46 ("[a] teacher had reported that T.L.O. was smoking in the lavatory. Certainly this report gave [the school official] reason to suspect that T.L.O. was carrying cigarettes with her"); *see also*, *e.g.*, *Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998) ("The question is whether "*it seems reasonable* [for] the police to believe that [the putative victim or] eyewitness was telling the truth," *Decoteau*, 932 F.2d at 1207 (emphasis added), and it is the plaintiff's initial burden in a § 1983 case to prove the unreasonableness of an officer's belief, as opposed to the defendant's onus to demonstrate the reasonableness thereof."). The same cannot be said for Johnson, however, who would, of course, have known that her report of the students' location was false, an allegation the School District defendants ignore. The claim against Johnson for unlawfully detaining L.M.G. and L.M.P. therefore survives. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) ("to the extent the defendants knew the allegations of [misconduct] were false, or withheld material information, and nonetheless caused, or conspired to cause [the seizure] . . . they violated the Fourth Amendment").

The plaintiffs go on to argue, however, that the other School District defendants violated the students' Fourth Amendment rights because "one or more of the school defendants summoned the police to the school to investigate and/or arrest the students," ECF No. 14, Resp. of School Defs., at 12, knowing that there was no basis to suspect either L.M.G. or L.M.P. of any "crimes or infractions." *Id*. In other words, the plaintiffs maintain, the School District defendants participated in the false arrests of the three students by the police.[14]

There are several problems with this argument. For starters, even relying solely on the complaint's sparse fact allegations concerning the events of that morning, the School District defendants had some basis to suspect both L.M.G. and L.M.P. of "crimes or infractions"— specifically, smoking and possessing marijuana on school property. *See* 720 ILCS 550/5 and 5.2;

---

[14] This contention implicates a question that the Supreme Court left open in T.L.O.— namely, whether T.L.O.'s reasonableness standard for gauging whether the actions of school officials comports with the Fourth Amendment when school officials work in conjunction with law enforcement:

> We here consider only searches carried out by school authorities acting alone and on their own authority. This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question.

*T.L.O.*, 469 U.S. at 341 n.7. So far as the Court is aware, neither the Supreme Court nor the Seventh Circuit has addressed this question and, because the allegations of the complaint fall short of alleging that the school defendants were working in tandem with the police, it is not necessary to resolve it here. The Court notes, however, that at least two circuits have suggested that when conducting searches and seizures in the context of law enforcement investigations of activity occurring in schools, the threshold for reasonableness may—like the standard applicable to searches and seizures by school officials—be lower than probable cause. *See*, *e.g.*, *T.S.H. v. Green*, 996 F.3d 915, 919-20 (8th Cir. 2021) (holding that T.L.O.'s reasonableness standard applies even "where both school officials and law enforcement officers were involved"); *Milligan v. City of Slidell*, 226 F.3d 652, 654 (5th Cir. 2000) (reversing district court and holding no Fourth Amendment violation occurred where police officers detained and questioned students without particularized suspicion about a prospective brawl brewing at the school because standard Fourth Amendment analysis "neglects the all-important school context").

410 ILCS 705/10-35. While this evidence falls short of demonstrating probable cause (*infra* at 18-20), it nevertheless has some probative weight. Further, summoning police to investigate possible criminal activity does not, standing alone, implicate the Fourth Amendment and if such investigation prompts the police to arrest a student, that is not generally an action for which school officials are responsible. *See*, *e.g.*, *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 625-26 (7th Cir. 2010) ("A principal is responsible for maintaining order and protecting the children in his or her charge. The principal is not responsible for performing police investigations and deciding just how to allocate fault" for criminal activity.). As the Seventh Circuit noted in *Stokes*, law enforcement, not school officials, bear the responsibility of ensuring that arrests satisfy the requirements of the Fourth Amendment: "If the police had qualms about the arrests, they were capable of investigating further if they thought it necessary." *Id*.

The plaintiffs cite several cases for the proposition that "a private individual can be considered a government agent for Fourth Amendment purposes." ECF No. 14 at 7. That is true enough—*see*, *e.g.*, *United States v. Hudson*, 86 F.4th 806, 810-11 (7th Cir. 2023)[15]—but the complaint's allegations do not suffice to plausibly show that the School District defendants were complicit in an unlawful arrest of these students by the police. To establish that a private individual acted as an instrument or agent of the government in conducting a search or seizure, the party

---

[15] Of the three cases cited by the plaintiffs for this proposition, only one actually addresses scenarios in which a private party is held responsible for Fourth Amendment violations. See Wolf-*Lilllie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (addressing Sheriff's supervisory responsibility for actions of deputies); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (same). The opinion in *Driver v. Birts*, 1997 WL 790714 (N.D. Ill. Dec. 16, 1997) does support the premise, but the quotation set forth in the plaintiffs' response brief—a private individual can be considered a government agent for Fourth Amendment purposes "when he or she has formed the necessary intent to assist in the government's investigative or administrative functions; in other words, when he or she intends to engage in a search or seizure" does not include that quote, however.

invoking the protection of the Fourth Amendment must, among other things, prove some exercise of governmental power over the private entity, such that the private entity may be said to have acted on behalf of the government rather than for its own, private purposes." *Hudson*, 86 F.4th at 811. The complaint alleges no facts that plausibly show such a relationship.

To the contrary, the complaint expressly alleges that the police defendants, not the school defendants, "ordered or otherwise caused L.M.G. and/or L.M.P. to be taken into police custody and transported to the Evanston police station." Compl. ¶ 52. The complaint, moreover, is bereft of allegations suggesting that the School District defendants were pursuing the agenda of the police rather than their own, independent, purpose of maintaining order and discipline in the school. As the School District defendants note, the complaint does not allege that they summoned police to ETHS, that they provided any information to the police about L.M.G. and L.M.P.'s conduct; or that they requested that the police arrest the students. So far as the complaint alleges, the police could have gathered information about the conduct of these students entirely from their own investigation. In any event, even if the School District defendants briefed police on what they had learned before the police arrived, or requested the students' arrests, that interaction would not suffice to establish that the school defendants were acting on behalf of police. *See, e.g.*, *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 640 (6th Cir. 2008) (school principal who required student to provide a written statement as to distribution of a prescription drug and which was not maintained by the school but was turned directly over to police was not acting as a government agent); *Stokes*, 599 F.3d at 625-26 (holding that it was reasonable for principal to safeguard students and staff by filing criminal complaints against individuals who had engaged in a brawl in the school office); *Butler v. Goldblatt Bros.*, 589 F.2d 323, 326 (7th Cir. 1978) ("It is well settled

in Illinois that giving information to police in itself is insufficient to constitute participation in an arrest.").

What's more, while the foregoing has discussed the claims against "the School District defendants," it must also be remembered that liability under § 1983 is personal; "the School District defendants" are only liable for their individual actions, not the conduct of other school officials. The plaintiffs fail to allege, however, which of the School District defendants summoned the police, shared information with the police, or prevailed upon the police to arrest the students. The only School District defendants named in Counts I and II of the complaint are defendants Johnson and Bell, who the plaintiffs claim are liable for the arrests of L.M.G. and L.M.P., and defendants Agusta and Soriano, who are alleged to have caused S.H.'s arrest. Bell, who is alleged to have done nothing more than escort L.M.G. and L.M.P. to the Dean's office, falls out of this group quickly, as does defendant Augusta, who is alleged merely to have identified students, including but not limited to S.H., on video surveillance footage in the company of other students who, for some other reason, had been identified as suspects. The limited involvement of these defendants does not begin to implicate them in the "false arrest" of the students. As for Soriano, the plaintiffs complain vociferously about the subterfuge he allegedly employed to locate S.H., but that is entirely irrelevant to an assessment of whether police violated the Fourth Amendment by arresting S.H. The complaint does not allege that, in leading police to S.H., Soriano knew that they were going to arrest S.H. unlawfully; nothing in the complaint alleges that Soriano had anything further to do with whatever investigation, evaluation, or arrest that ensued. That leaves, again, defendant Johnson, who is alleged to have falsely reported that she located the students in the bathroom, rather than the corridor outside the bathroom, where the smell of marijuana had been detected. But there are no allegations that Johnson ever communicated with the police at all, much

less about where she located L.M.G. and L.M.P., or that anyone advised the police of Johnson's allegedly false report. There is not, then, a plausible showing that any of the School District defendants caused L.M.G., L.M.P., or S.H. to be falsely arrested "when they knew there was no probable cause or reasonable suspicion to believe the students had been involved in criminal conduct."[16] ECF No. 14, Resp. at 6.

In short: the complaint states a plausible claim for unlawful detention as to defendant Johnson under the Fourth Amendment, limited to the period before the students were arrested and taken to the police station, but not as to any other School District defendant. The School District, however, is also implicated in this claim under the doctrine of *respondeat superior*.

### 2. Police Defendants

As for the Evanston police defendants, the complaint alleges that officers Spells, Levy, Arzuaga, and Schienbein arrested L.M.G. and L.M.P. at some point after the School District defendants detained and questioned them. Officers Niziolek and Cameron are alleged to have arrested S.H. when he was removed from his classroom. The complaint does not allege that the police defendants had any information other than that already described above. That poses a problem for the police defendants, because unlike the School District defendants, who didn't need to have probable cause to arrest or search students regarding possible misconduct at school, the police defendants did. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) ("The standard for arrest is probable cause . . . ."). The City of Evanston is named under a theory of *respondeat superior*.

---

[16] This is so even assuming that the School District defendants provided the false information Johnson is alleged to have reported concerning where the student plaintiffs were located, because there is no allegation that any of the school defendants—other than Johnson—knew that information was false.

The Evanston defendants do not argue that the defendant officers had probable cause to arrest the students. They assert, instead, that they are entitled to qualified immunity because it was not clearly established that it was unconstitutional to "detain those in contact or associated with the students accused of serious misconduct or possession of dangerous weapons on school property." ECF No. 19 at 7. But the defendant officers didn't "detain" the students; they arrested them. And it was certainly established long before December 2021 that police needed probable cause to arrest, whatever the nature of the crime at issue. *Fleming v. Livingston Cty.*, 674 F.3d 874, 879 (7th Cir. 2012) ("There is no question that [the] constitutional right to be free from arrest without probable cause was clearly established at the time of the incident."); *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("In the context of an unlawful arrest ..., the law was and is unambiguous: a government official must have probable cause to arrest an individual.").

But an officer is still entitled to qualified immunity in a false arrest case when "a reasonable officer could have mistakenly believed that probable cause existed. This inquiry is sometimes referred to as 'arguable probable cause.' . . . Arguable probable cause is established when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law. Whether arguable probable cause "supports qualified immunity is a pure question of law to be decided by the court." *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655–56 (7th Cir. 2024).

The spare allegations of the complaint, however, fall short of establishing even arguable probable cause for the students' arrests, so at this juncture, the officers qualified immunity defense does not require dismissal of the complaint as to the officers. As noted above, the complaint provides no description of the information the police defendants were aware of when they arrested

the students. Even assuming that they did not know that Johnson's alleged report that L.M.G. and L.M.P. were found in the restroom where marijuana had been reported was false, the mere fact that the two brothers were found in the same restroom, at some unspecified period of time after the smell of marijuana had been reported, does not provide a reasonable basis to believe that there was probable cause to arrest them for possessing marijuana, much less arrest them for anything to do with firearms located at the school (as to which, again, the complaint makes no reference). And as for S.H., the only information the police defendants had, so far as the complaint alleges, is that S.H. was seen on a video "in contact with or associated with" students who had been apprehended. Where this video was taken, when it was taken, who the other students were, and what they were doing are not described in the complaint, so at this juncture the Court cannot conclude that the police defendants had arguable probable cause to arrest S.H., either.

The Evanston defendants maintain that the police did have additional information—namely, that the school instituted a lockdown after its initial investigation, from which it can be inferred, at a minimum, that the school had uncovered serious misconduct or a dangerous condition that threatened the student population." ECF 19, Evanston Defs' MOL, at 5. That provides little context, however, for evaluating the reasonableness of the police defendants on the morning of December 16 with respect to the plaintiffs. It does not tell us the nature of the threat, whether it was connected to the report of marijuana in the restroom, or how or where the dangerous condition was found or located. And, critically, the mere fact that firearms were discovered at the school provides no information linking the plaintiff students to any such dangerous condition. Nor does the complaint contain any information about any connection between D.R., L.M.G., and L.M.P., on the one hand, and S.H. on the other. School Safety Officer Augusta reviewed some video surveillance footage and identified S.H. as being among a group of students who were "in contact

or associated with" five other students (unidentified in the complaint) who had already been apprehended, but provides no information about how S.H. was associated with other students who had been "apprehended."

Even assuming that this additional information added to the information known to the police, however, at best it would have given police some basis to suspect that the plaintiff students were somehow involved in potentially serious misconduct. On that basis, the police defendants may have had grounds to detain and question the students—as opposed to arresting them—but that is as far as the inference of serious but unidentified misconduct can take them. The complaint does not allege that the police defendants "detained" the students for questioning at school; it alleges that they transported them to the police station in custody. The fact that something serious was happening at the school says nothing about what that misconduct involved or how it involved these students. And while the defendants seek to finesse the point by avoiding the word "arrest" in favor of "detain," very clearly the plaintiffs were arrested when they were involuntarily transported from the school by police, in handcuffs, without notice to their mothers, who were on-scene, held in custody at the police station for an additional period, and presented with a waiver of rights regarding a custodial interrogation. *See* Police Defs. MOL, E.C.F. No. 19, at 8 (observing that S.H. was "arrested and transported to the Evanston Police Department"); *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) ("involuntary transport to a police station for questioning is sufficiently like arrest to invoke the traditional rule that arrests may constitutionally be made only on probable cause") (cleaned up); *Adams v. Szczerbinski*, 329 Fed. App'x 19, 24 (7th Cir. 2009) (suspect who was "handcuffed, read his rights, and transported to the police station in a police car" was under arrest). On the present, extremely limited, record, the arrests of L.G.M, L.P.M., and S.H. were not supported by even arguable probable cause.

The police defendants also argue that the complaint fails to specify with the requisite particularity what each of them are alleged to have done to violate, or cause a violation, of the students' constitutional rights. The complaint, they assert, resorts to impermissible "group pleading" that fails to provide adequate notice to them as to the students' claims. But "[t]here is no "group pleading" doctrine, *per se*, that either permits or forbids allegations against defendants collectively; "group pleading" does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019).

The complaint satisfies this minimal standard. The complaint names seven police officers: Spells, Cameron, Arzuaga, O'Brien, Niziolek, Schienbein, and Levy. It alleges that Levy supervised the other officers at the school and distinguishes the officers who dealt with S.H. (Niziolek, Cameron, and O'Brien) from those who dealt with L.M.G. and L.M.P (Spells, Arzuaga, and Schienbein). *Cf. Hernandez v. Guevara*, No. 23 CV 15375, 2024 WL 4299046, at *7 (N.D. Ill. Sept. 26, 2024) (rejecting "group pleading" argument in part because complaint distinguished between principal groups of defendants). The complaint specifically alleges that Niziolek and Cameron searched S.H. at the school, handcuffed him, and removed him from the classroom; O'Brien is alleged to have maintained custody of S.H. at the police station. Spells allegedly questioned L.M.G. and L.M.P. and seized L.M.P.'s cell phone. Levy, Spells, Arzuaga and Schienbein are alleged to have participated in taking L.M.G. and L.M.P. into custody and transporting them to the police station, where Schienbein maintained custody of at least LM.P. Thus, while these allegations may not define the entirety of each officer's involvement, they suffice to plausibly allege that each of the police defendants had a hand in the course of events that culminated in the students' arrests—seizures that, the complaint repeatedly alleges, were not

justified by any basis to believe that the students had any involvement in any criminal activity, much less probable cause. The complaint does not fail for "group pleading."

Because the complaint adequately alleges a plausible claim for unlawful detention and search against the police defendants under a Fourth Amendment direct liability theory, there is no need to assess whether the alternative theories of supervisory liability (Count IX) and failure to intervene (Count X) would also support relief on the unlawful seizure and search claim; that claim goes forward as to the police defendants whether the specific theories in Counts IX and X are viable or not. That said, to the extent that the police defendants premise their arguments as to these theories on the fact that the complaint does not allege with sufficient particularity the acts of the individual police defendants, the argument fails for the same reasons that the police defendants' group pleading argument fails: the complaint adequately alleges facts that implicate those defendants in the conduct on which the unlawful detention and search claims are based. The premise that every act committed on December 16 must be specifically attributed to the responsible individual(s) in the complaint is simply wrong. As the Seventh Circuit has explained:

> To the extent the district court demanded that complaints plead facts . . . it was mistaken. Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead claims rather than facts corresponding to the elements of a legal theory. . . . Because complaints need not identify the applicable law, . . . it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each.

> It is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). A full description of the facts that will prove the plaintiff's claim comes later, at the summary judgment stage or in the pretrial order. So both the Supreme Court and this court have held when rejecting contentions that Rule 8 as understood in *Twombly* requires fact pleading.

*Chapman*, 875 F.3d at 848.

The complaint pleads a plausible claim that the police defendants each played a part in the unlawful seizure and searches that are the gravamen of the plaintiffs' claims. The process of discovering the full scope of each defendant's culpability comes during and after discovery, not at the outset of the pleading process.

### B.    Claim 2: Interference with Parental Relationship

In Counts VI and VII, the plaintiffs press legal theories premised on the actions of several of the defendants in preventing Anderson, Elisheba, and Crystal from communicating with their children as the events of December 16, 2021, unfolded. The defendants named in those counts (Boyd, Soriano, Spells, Driscoll, and Robinson), they maintain, violated the substantive due process clause of the Fourteenth Amendment and the Illinois Parental Notification Act by interfering with the plaintiffs' familial rights.[17] Boyd allegedly prevented D.R. from speaking with Crystal; Spells allegedly confiscated L.M.P.' cell phone; Driscoll allegedly tried to have police remove Crystal and Elisheba from the entry of the school and refused to provide them with information, and all but Driscoll are alleged to have participated in questioning the student plaintiffs in separate rooms and without their parents' presence.

In moving to dismiss this claim, the defendants rely on the Seventh Circuit's decision in *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). In *Russ*, the court of appeals overruled this circuit's prior holding recognizing a substantive due process claim asserted by the father of a university student wrongfully shot and killed by a police officer. Noting that "[a]lthough it is well established that parents have a fundamental constitutional liberty interest in the 'care, custody, and control of their children,' *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000), the

---

[17] The plaintiff mothers have standing to assert this claim on their own behalf as well as on behalf of their sons.

appropriate framework for analyzing claims alleging a violation of this interest is less than clear." *Russ*, 414 F.3d at 789. Concluding that "[t]he Supreme Court has recognized violations of the due process liberty interest in the parent-child relationship only where the state took action specifically aimed at interfering with that relationship," however, the Seventh Circuit held that "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Id.* at 790.

The Court cannot conclude as a matter of law that the plaintiffs have failed to state a plausible claim for interference with the parent-child relationship. The defendants maintain that "[b]ecause their actions were part of [a] broad disciplinary investigation involving other students who were also apprehended," and the school was on lockdown, their alleged conduct was not aimed specifically at interfering with the parent-child relationship, so there was no substantive due process violation. ECF No. 7-1 at 10. But that conclusion reflects a selective reading of the allegations of the complaint, which also includes allegations that the defendants attempted to have the plaintiff mothers removed from the school entrance and prevented not just in-person contact between the students and their mothers but also cut off any phone contact. These allegations, though spare, are sufficient to state a plausible claim that the defendants' actions were specifically intended to isolate the plaintiff students from their parents.

They are also sufficient to resolve—at this juncture—the defendants' claim of qualified immunity. "An official is entitled to qualified immunity for conduct that does not clearly violate established statutory or constitutional rights of which a reasonable person would have known." *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). Qualified immunity protects "all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff "bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Olson v. Cross*, 714 F. Supp. 3d 1034, 1048 (N.D. Ill. 2024) (quotation marks omitted). "Although a plaintiff need not put forth 'a case directly on point,' settled authority 'must have placed the statutory or constitutional question beyond debate.' *al-Kidd*, 563 U.S. at 741, 131 S. Ct. 2074 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987))." *Manery v. Lee*, 124 F.4th 1073, 1080 (7th Cir. 2025).

The defendants point out that the plaintiffs have not identified clearly established case law, or any other authority, confirming that temporary curtailment of access by parents to their children during a significant disturbance at the school violates the Fourteenth Amendment. True enough, but this is a fact-intensive inquiry and it is simply not clear at this stage what the facts are on which qualified immunity will be evaluated. The plaintiffs were not required to negate the affirmative defense of qualified immunity in their complaint and, consequently, the record lacks information as to why the defendants did not allow the plaintiff parents access to their children and to what the defendants were responding in cutting off communications between the mothers and their sons. Given that factual vacuum, the Court cannot conclude, one way or another, whether the defendants were targeting the parent-child relationship. More factual development is required. *See*, *e.g.*, *Reed v. Palmer*, 906 F.3d 540, 549-54 (7th Cir. 2018) (reversing grant of qualified immunity asserted on a motion to dismiss pursuant to Rule 12(b)(6) where available record lacked information about the reasons that defendants isolated the plaintiffs).

In addition to their substantive due process theory, the plaintiff parents support their claim based on interference with the parent-child relationship with the "Illinois Parental Notification Act," 105 ILCS 5/22-88. Because the plaintiffs' claim survives the defendants' motion to dismiss

under their substantive due process theory, there is no need to consider the viability of the claim under this alternative state law theory at present.

### C.       Negligent/Intentional Infliction of Emotional Distress

In Count VIII, the plaintiffs seek relief, based on all of the conduct alleged against the defendants, under state law for intentionally or negligently inflicting emotional distress. This is not a separate claim, as it rests on the allegations undergirding the plaintiffs' claims for unlawful search and seizure and interference with the parent-child relationship; there are no additional allegations of fact that bear only on this theory.  And since both of those claims survive against at least some of the defendants, there is no basis to dismiss these theories at this juncture.

*       *       *

To recap: The complaint fails to state a plausible claim for unlawful detention and search against the School District defendants, with the exception of defendant Johnson and the School District. It succeeds, however, in stating a plausible claim on those grounds against the Evanston defendants. The complaint also states a plausible claim premised on interference with the plaintiffs' familial relationships against defendants Boyd, Soriano, Spells, Driscoll, and Robinson.


Dated: April 7, 2025

John J. Tharp, Jr.
United States District Judge